STATE OF MAINE                              SUPERIOR COURT
WASHINGTON, ss                             CIVIL ACTION
                                           DOCKET NO. CV-2018-08


TOWN OF ADDISON                    )
                                  )
                                  )
                                  )
                                  )
vs.                               )         **ORDER AND DECISION**
                                  )
                                  )
                                  )
                                  )
RICHARD KELSEY                    )
        Defendant                 )


By a Verified Complaint filed March 16, 2018, the Town of Addison (hereafter "Town") has brought an action for summary process pursuant to 17 M.R.S. §2859 asking the court to order demolition of Mr. Kelsey's building known as the "Old Clam Shop" located in Addison, Tax Map 1, Lot 105. Hearing was held on September 27, 2018. Testimony was received from Addison Code Enforcement Officer Judith Rolfe, Randy Bragg, P.E., Peter Tuell, P.E. and Richard Cooper Kelsey, III, who is the son of the Defendant, Richard Kelsey. Also admitted in evidence were Plaintiff's Exhibits 1 through 15, Exhibits 1 through 14 being photographs of the building which is the subject of this action, and Exhibit 15 being a copy of Mr. Kelsey's deed.


## STANDARD OF REVIEW


17 M.R.S. § 2859 provides, in pertinent part:

> In cases involving an immediate and serious threat to the public health, safety or welfare, in addition to any other remedies, a municipality may obtain an order of demolition by summary process in Superior Court, in accordance with this section.
> **1. Commencement of action.** A municipality, acting through its building official, code enforcement officer, fire chief or municipal officers, shall file a verified complaint setting forth such facts as would justify a conclusion that a building is dangerous, as described in section 2851, and shall state in the complaint that the public health, safety or welfare requires the immediate removal of that building.
> **4. Hearing.** After hearing, the court shall enter judgment. If the judgment requires removal of the building, the court shall award costs to the municipality as authorized by

1

this subchapter. The award of costs may be contested and damages sought in a separate action to the extent permitted by subsection 7.

The standard for the court to adjudge a building a nuisance or dangerous pursuant to 17 M.R.S. § 2851(2-A) requires finding that the building is structurally unsafe, unstable or unsanitary; constitutes a fire hazard; is unsuitable or improper for the use or occupancy to which it is put; constitutes a hazard to health or safety because of inadequate maintenance, dilapidation, obsolescence or abandonment; or is otherwise dangerous to life or property.

Accordingly, to grant the Town summary process as requested, the Town must prove by a preponderance of the evidence that the building known as The Old Clam Shop is:
1. structurally unsafe, unstable or unsanitary; constitutes a fire hazard; is unsuitable or improper for the use or occupancy to which it is put; constitutes a hazard to health or safety because of inadequate maintenance, dilapidation, obsolescence or abandonment; or is otherwise dangerous to life or property (§2851(2-A)); *and*
2. involves an immediate and serious threat to the public health, safety or welfare. (§2859).

## FINDINGS AND DISCUSSION

The Old Clam Shop is a wooden structure more than a 100 years old. Per the deed, Mr. Kelsey acquired the property in 2007, but within the deed there is reference to it being previously conveyed to Richard C. Kelsey, Jr. and Belinda A. Kelsey by a deed in 1988. (Ex. 15). Regardless of when Mr. Kelsey acquired the property, or how long he has owned it, there is minimal evidence of him ever conducting any maintenance or repair, with exception of occasional mowing and picking up of garbage.

The prove its case the Town presented the testimony of Ms. Rolfe and Mr. Bragg. Trained as a code enforcement officer, Ms. Rolfe testified that the building is not structurally safe or stable, is hazardous, and presents an immediate and serious threat to the public health or safety. Mr. Bragg, a licensed professional engineer, testified the building is unstable, has settled and moved significantly and rotated, is unstable and unsafe, and poses an immediate and serious threat to public safety. Neither Ms. Rolfe nor Mr. Bragg went inside of the building to further their inspection, but both of them indicated it was because they felt the building was unsafe to enter. This is consistent with the Town's fire department having indicated its personnel were directed not to enter the building if it was involved in a fire.

The testimony of Ms. Rolfe and Mr. Bragg is supported by photographs of the building. The following defects or concerns are apparent from reviewing the photographs:
1. the end adjacent to the water has settled by as much as two feet as seen by the difference in the height of the flashing on the chimney. (Ex's. 1 through 5, 7, 9 through 14).

2

2. Both gable ends have buckled and are deformed to various degrees, and are significantly deteriorated, and both ends have settled. (Ex's. 6,8,11).
3. Both side walls are deteriorated and weathered with varying degree of deformity or curvature in the walls viewed longitudinally (Ex's. 1 through 5, 8, 10, 12 through 14).
4. The glass is missing in nearly all of the windows. (Ex's 1 through 14).
5. Large sections of the roof have open holes, and are missing shingles; what shingles remain are weathered and seriously deteriorated. (Ex's. 7,11 and 14).
6. The roof and eaves are deformed with valleys and curvature visible. (Ex's. 9, 11 through 14).

Based upon the testimony of Ms. Rolfe and Mr. Bragg and the photographs, the court finds that the Town has proven by a preponderance of the evidence that the building is structurally unsafe and unstable, in its current condition is not suitable for any use or occupancy, and in its dilapidated condition presents a hazard to health and safety. The evidence also establishes the building is unsecured, such as could be accomplished by fencing, and therefore presents a health and safety risk to trespassers, homeless or even children who dared to enter. There is no power source to the building, but the building potentially remains at risk for fire caused by lightning or by a human source, but in the event of fire, the Town's fire department has indicated it will not enter the building. So even though the risk of fire may be minimal, the potential of collateral damage to nearby structures is enhanced by these conditions.

Evidence was also introduced of a particularly severe weather event that occurred in March of 2018 resulting in an extremely high tide. (Ex's 1 through 5). As the defense expressed, such high tides are out of the ordinary, and the tide level seen in Exhibits 1 through 5 are not the norm. On the other hand, Ms. Rolfe testified to a few unusually high tides occurring in recent months, and although not as severe as in March, these recent high tides cause the Town concern.

The concern of high tides is legitimate. During the exceptionally high tide occurring in March, significant damage and movement was caused to the shed attached to the building. (Ex's. 1 through 6). And Ms. Rolfe testified to items of debris floating out of the shed. Overall, the Town expressed concerns that another unusually high tide or weather event could cause the building to collapse into the river and result in an environmental issue.

The defense countered with the testimony of Peter Tuell, also a professional engineer, that it was his opinion that the building did not constitute an imminent risk and would not collapse from its own force within the next 90 days, or even 6 months. But Mr. Tuell testified he was hesitant to opine beyond 6 months because of uncertainty of the potential of severe storm events. Mr. Tuell's hesitancy to opine further because of a severe storm event demonstrates precisely why the building presents an immediate risk. No one can predict with certainty when the next severe weather event will occur. It could occur in the fall during hurricane season, or in the spring when higher waters occur, such as in March 2018. The court finds that the building does present a serious health or safety risk, that is heightened by the risk of the next severe weather event, making the risk immediate.

3

The court has otherwise carefully considered the remaining opinions by Mr. Tuell. Mr.Tuell's observations of the external condition of the building are not inconsistent with what the court described above as observable in the photographs. But Mr. Tuell's inspection also involved going inside of the building. Based on his interior inspection, Mr. Tuell suggests the internal structures and overall integrity of the building is salvageable and the building is not at risk of immediate collapse.

The court concurs that going inside of the building afforded Mr. Tuell a vantage that Ms. Rolfe and Mr. Bragg did not have. Yet, Mr. Tuell also expressed that the building is not safe to occupy in its current condition, and it is not secure. To safeguard and prevent collapse, Mr. Tuell outlined a preliminary stabilization plan. The preliminary stabilization plan involved securing the property with fencing and securing the building with boards, installing new support beams and cribbing, and repairing the roof. Although a firm estimate was not provided, Mr. Tuell suggested the preliminary stabilization plan would cost several thousands of dollars. And based on both Mr. Tuell's and Cooper Kelsey's testimony, the work would take several weeks to a number of months to complete, and neither had a firm understanding as to how long it would take to obtain the necessary permits to commence any work.

The court finds Ms. Rolfe and Mr. Bragg more persuasive than Mr. Tuell that the current condition of the building presents an immediate and serious risk to the public health and safety. Mr. Tuell's suggestion that the building is not at immediate risk of collapsing is tempered by his own acknowledgment of uncertainty as to what a severe weather event could cause, and that avoiding collapse is dependent upon completion of a stabilization plan within the next several weeks.

The court is not persuaded that the building can be rehabilitated from presenting an immediate and serious risk to public health and safety. But even assuming it was, giving Mr. Tuells' testimony its best light, extensive and costly action is immediately required. The court acknowledges Cooper Kelsey testified of having great intentions. But based on the serious condition of the building and extensive work required to merely shore up the building from collapse, the court is not persuaded that Mr. Kelsey has the ability to immediately ameliorate the threat that the building presents.

In conclusion, the court finds that the Town has proven by a preponderance of the evidence that the building known as the Old Clam Shop located in Addison on Tax Map 1, Lot 105 is structurally unsafe, unstable, unsuitable for use or occupancy and constitutes a health and safety hazard because of its dilapidated condition, and that it presents an immediate and serious threat to public health and safety. Accordingly, the court grants the Town's request for judgment against the Defendant, Richard Kelsey, ordering demolition of the building, and expenses.

4

The entry is:

1. Plaintiff, the Town of Addison, is granted judgement against the Defendant, Richard Kelsey, pursuant to 17 M.R.S. § 2859 and demolition is ordered of the building known as the Old Clam Shop located in the Town of Addison, Map 1, Lot 105; and in addition Plaintiff is awarded expenses as allowed by 17 M.R.S. § 2853.
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: _____, 2018

_____
Justice, Maine Superior Court

5